IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION


IRA LEVERSON, JR.                                                                   PLAINTIFF

V.                                                                                  CIVIL ACTION NO.
                                                                                    2:07cv136-P-A

MICHAEL J. ASTRUE, Commissioner of
 Social Security                                                                    DEFENDANT


## MEMORANDUM OPINION

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Ira Leverson, Jr. for a period of disability and disability insurance benefits under Title II and Supplemental Income (SSI) benefits under Title XVI of the Social Security Act. This action is brought pursuant to § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). The district court's jurisdiction over Leverson's claim rests upon 28 U.S.C. § 1331. In accordance with the provisions of 28 U.S.C. § 636 (c), both parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including an order for entry of a final judgment. Therefore, the undersigned has authority to issue this opinion and the accompanying final judgment.

## PROCEDURAL HISTORY

Ira Leverson, Jr. protectively filed his application for disability benefits on April 12, 2004, alleging an onset date of disability of September 1, 2001. Leverson later amended his alleged onset date to March 1, 2004. After his claim was denied twice, Leverson requested a

hearing before an administrative law judge (ALJ), which was held on January 4, 2007. On March 13, 2007, the ALJ issued his decision denying the claim. Leverson's request for review by the Appeals Council was denied on August 9, 2007. The Appeals Council's denial of the petition for review perfected the ALJ's decision as the final decision of the Commissioner, which is now ripe for the court's review.

## FACTS

Leverson was born on September 20, 1957, and was 46 years old at the time of the alleged onset of his disability. He has a high school education and previously worked as an sander/assembler, factory line worker, and a block operator.

In May 2001, Leverson injured his back while working. On July 30, 2001, he had a left partial hemilaminectomy and diskectomy at L4. Leverson initially improved and returned to work in late 2001. His pain began to worsen, however, and Leverson stopped working. Leverson began going to Sardis Primary Care in March 2004 and was seen primarily by family nurse practitioner Richard Hartig. The ALJ had records from Sardis Primary Care through May 2005. Leverson was also seen at the Batesville Clinic, PA by Dr. Ball on a routine basis from February 25, 2004 until May 25, 2006, which was contemporaneous with his visits with Nurse Hartig. Dr. Ball's records were presented for the ALJ's review. Leverson presented additional medical records from his visits with Dr. Ahmad at the A.E. Henry Community Health Center in April, May, June and July 2007 to the Appeals Council. The ALJ, however, was not able to review those records as they were generated after his March 13, 2007 decision.

The ALJ found Leverson not disabled as of March 13, 2007, and after considering the testimony of a vocational expert as well as Leverson's age, education, work experience, and

residual functional capacity, determined that Leverson was capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

## DISCUSSION

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390 (1971)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner,[1] even if it finds that the evidence leans against the Commissioner's decision.[2] If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

In determining disability, the Commissioner, through the ALJ, works through a five-step

---

[1] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[2] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

sequential evaluation process.[3] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining his burden at each of the first four levels, the burden then shifts to the Commissioner at step five.[4] First, the plaintiff must prove he is not currently engaged in substantial gainful activity.[5] Second, the Commissioner considers the medical severity of the claimant's impairment.[6] At step three the ALJ must conclude the plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (1998).[7] Fourth, the Commissioner considers their assessment of the claimant's residual functional capacity and the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.[8] If the plaintiff is successful at all four of the preceding steps the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[9] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that he cannot, in fact, perform that work.[10]

---

[3] *See* 20 C.F.R. § 416.920; 20 C.F.R. § 404.1520(2007).

[4] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[5] 20 C.F.R. § 416.920(a)(4)(I); 20 C.F.R. § 404.1520(a)(4)(i)(2007).

[6] 20 C.F.R. § 416.920(a)(4)(ii); 20 C.F.R. § 404.1520(a)(4)(ii)(2007).

[7] 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404.1520(a)(4)(iii)(2007).

[8] 20 C.F.R. § 416.920(a)(4)(iv); 20 C.F.R. § 404.1520(a)(4)(iv)( 2007).

[9] 20 C.F.R § 416.920(a)(4)(v); 20 C.F.R. § 404.1520(a)(4)(v)(2007).

[10] *Muse*, 925 F.2d at 789.

Leverson asserts that the Commissioner erred in three ways:

(1) failing to find Leverson disabled pursuant to 1.04A in the Listing of Impairments, in light of objective findings and opinions from treating sources;

(2) failing to accord proper weight to the opinions of Leverson's treating sources and improperly relying upon the opinion of the non-examining state agency physician, which resulted in a residual functional capacity assessment that was unsupported by substantial evidence, and, which, in turn, rendered the ALJ's reliance upon the testimony of the vocational expert to find Leverson not disabled at Step 5 also erroneous; and

(3) failing to send Mr. Leverson for neurological evaluation, as requested by counsel at the hearing.

In support of his first point of error, the Leverson argues that the ALJ did not apply the proper legal standards, and his decision that Mr. Leverson "does not have an impairment or combination of impairments that meets or medically equals" any of the impairments in Listing 1.04A is not supported by the evidence.

Listing 1.04 provides a combination of medical conditions and resulting limitations, which, if met or equaled, direct a finding of disability at step three of the sequential evaluation process.[11] In order to meet or equal listing 1.04, Mr. Leverson must meet the following requirements:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuroanatomic distribution of

---

[11] See 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04.

pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)...[12]

It is Leverson's burden to demonstrate that his condition satisfies the criteria in a medical listing. *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). These criteria are "demanding and stringent," and ample evidence supports the ALJ's conclusion that Leverson did not meet them. *Id.*

The regulations provide that when determining whether an impairment medically equals a listing the Commissioner will consider "all evidence in your case record about your impairment(s) and its effect on you that is relevant to this finding." 20 C.F.R. § 404.1526. It is clear that the ALJ considered all of the evidence in Leverson's case record, including the opinions of medical consultants. And although he did not explicitly mention listing 1.04A, he did comprehensively discuss the subjective and objective evidence, which he concluded failed to equal the requirements of Medical Listing 1.04. R. 21-22. The physical examination conducted by Dr. Randolph, an occupational medicine physician, on July 22, 2003, revealed negative straight leg tests, an ability to bend, twist, reach and squat, but that Leverson complained of stiffness. R. 148. Nurse Hartig's notes from March 10, 2004 through May 10, 2005, do indicate a positive straight leg test at 15-20 degrees for the right leg. R.195-204. However, Leverson's original disc injury was a "<u>left</u> lumbar 4 far lateral disc compressing the left lumber 4 nerve root"(emphasis added). R. 133. The residual functional capacity exam conducted on August 1, 2004 revealed no motor deficits. R. 164. Dr. Ball's notes from January 25, 2006 state that Leverson was still having pain, but the pain was helped with pain medication, and Dr. Ball discussed the option of vocational rehabilitation with Leverson at that visit. R. 210. In addition,

---

[12] *Id.*

the straight leg test conducted on May 18, 2006 was negative, and Leverson's heel to toe walk test was normal. R. 211. The ALJ also reviewed the MRI results of November 2004 noting the specific results. R. 21. The ALJ's conclusion that Leverson did not meet the criteria in the medical listing is supported by the evidence found in the record.

Further, the ALJ also evaluated Leverson's reported pain symptoms in accordance with the standard set forth in 20 C.F.R. § 404.1529. At the hearing before the ALJ, Leverson reported that he experienced "pain in the lower part of my back with a burning sensation across the lower part of my back where the pain runs (sic) down both, both leg and I also have numbness in the lower part of my leg." R 294. The ALJ concluded that Leverson had a medically determinable impairment which could reasonably be expected to produce some of the alleged symptoms as required by 20 C.F.R. §§ 404.152 (c)and 404.929(c). R 21. The ALJ next weighed factors that were relevant to Leverson's symptoms including (1) his level of daily activity, (2) the location, duration and intensity of pain, (3) precipitating and aggravating factors;(4) the type, dosage and effectiveness of medications taken for the pain, including the side effects, (5) treatment other than medication for pain relief, (6) any measures used to relieve pain, and (7) other factors concerning functional limitations and restrictions due to pain. *See* 20 C.F.R. §§ 404.152 (c)(3) and 404.929(c). The ALJ found it significant that Leverson was able to perform daily activities that required a certain level of exertion, such as preaching every Sunday, driving a car, performing housework, yard work and holding rummage sales. R. 21 and 294-5. Leverson testified that he was able to sit for an hour at a time and was able to walk for ten to fifteen minutes at a time. R. 296. To relieve back pain, Leverson reported reclining or sitting on the couch. R. 296. Finally, the ALJ went on to discuss both the objective findings from medical

health care practitioners and the MRI exams. R. 21. There was substantial evidence in the record for the ALJ to determine that Leverson's subjective complaints were not credible to the extent alleged.

Citing *Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007), Leverson contends that the ALJ's failure to offer an explicit point-by-point analysis of whether he met the criteria in Listing §1.04 compounded the ALJ's error in not finding that he met this listing. In *Audler*, the ALJ concluded that the claimant did not meet the any of the listed medical impairments found in the regulations, without identifying any particular medical impairment or providing an explanation for that conclusion. Although the ALJ is not required to engage in a point-by-point discussion, an explanation supporting his conclusion is necessary in order to determine whether the decision is based on substantial evidence. *Audler*, 501 F.3d at 448. The Fifth Circuit cited *Clifton v. Chater*, 79 F3d 1007 (10th Cir. 1996), in holding that when Audler presented evidence that she did meet the criteria of the medical listing, the ALJ was obliged to explain why this evidence was not sufficient to support a finding of disability. *Id.*

The Commissioner correctly notes, however, that an ALJ's failure to detail such findings at Step 3 does not necessarily require reversal as long as the ALJ makes factually supported findings at Steps 4 and 5 which eliminate "*any* concern that a claimant might have been adjudged disabled at Step 3." *Fischer-Ross v. Barnhart*, 431 F3d 729, 733 (10th Cir. 2005). The *Fischer-Ross* court clarified its earlier holding in *Clifton*, explaining that the principle enunciated in that case was merely to ensure adequate development of an administrative record and an explanation of the findings to permit meaningful review. *Fischer-Ross*, 431 F.3d at 734. Where an ALJ elsewhere provides detailed findings based upon substantial evidence that also support

8

the finding at Step 3, there is no need to remand the case for further discussion of Step 3. *Id.* The court finds the *Fischer-Ross* Court's interpretation of *Clifton* persuasive and appropriately applied here.

The ALJ in this case did summarily conclude that Leverson did not meet the criteria of a listing to be considered disabled without specifically identifying the medical listing or providing an initial discussion of that conclusion. He did, however, provide a detailed review and analysis of his conclusion that Leverson was not disabled. R. 21-22. He found further that Leverson was not able to perform a job at his previous level, but based upon his age, education, work experience and RFC, he was able to work in other capacities. R. 22-23. The ALJ's thorough analysis at steps four and five is supported by substantial evidence and, as such, supports his conclusion that Leverson was not disabled under any medical listing at Step 3.

Plaintiff next claims that the ALJ erred in failing to accord proper weight to the opinions of plaintiff's treating sources, resulting in a residual functional capacity assessment that was erroneous and unsupported by substantial evidence. The Fifth Circuit has very clearly stated the approach an ALJ must take in according weight to a treating physician's opinion:

> [A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2). Additionally, if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)(emphasis in original). The regulations cited in *Newton* also correspond to 20 C.F.R. §§ 416.927(d) and 416.912(e), which are applicable in

cases, such as this one, also brought under Title XVI of the Social Security Act. Under 20 C.F.R. § 404.1527(d)[13] the factors to be considered in assessing the opinion of the *treating* physician include such common sense considerations as the length of the treatment relationship, frequency of examination by the physician, the nature and extent of the treatment relationship and the "supportability" of a medical source's opinion by relevant evidence. Section 404.1527(d)(3)[14] specifically defines "supportability" by detailing the approach that should be taken with non-examining medical sources whose opinions are not founded upon direct knowledge of a particular claimant's case:

> The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

Section 416.1527(f)(2)(ii)[15] further discusses the role of state agency consultants:

> When an administrative law judge considers findings of a State agency medical or psychological consultant or other program physician or psychologist, the administrative law judge will evaluate the findings using relevant factors in paragraphs (a) through (e) of this section, such as the physician's or psychologist's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations provided by the physician or psychologist, and any other factors relevant to the weighing of the opinions. Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other

---

[13] *See* also § 416.927(d).

[14] *See* also § 416.927(d)(3).

[15] *See* also § 416.927(f)(2)(ii).

> program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

Leverson contends that the ALJ did not accord proper weight to the opinions of Nurse Hartig and Dr. Sohail Ahmed. The ALJ evaluated the opinion of Nurse Hartig along with all other medical evidence that was part of the record at the time. Dr. Ahmed's report, although considered by the Appeals Council, was not proffered until after the ALJ reached a decision, and therefore could not be evaluated by him. The ALJ concluded that Nurse Hartig's findings were inconsistent with the other substantial evidence in the case record and not based on objective findings. R. 22. The ALJ relied, in part, on the opinion of the state agency physician. The ALJ was free to use that opinion in making his decision and, in the court's view, adequately explained why he accorded more weight to the non-examining state agency physician's opinion than to Hartig's opinion. The ALJ's refusal to accord controlling weight to Hartig's opinion followed the criteria in 20 C.F.R. § 404.1527(d)(2) and § 416.927(d)(2). The decision therefore applied proper legal standards and is supported by substantial evidence.

Leverson finally claims that the ALJ erred in failing to send Leverson for a neurological evaluation as requested by counsel at the hearing. The ALJ's duty to undertake a full inquiry "does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989), citing *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977) (emphasis in original). Whether to require such an examination is a discretionary call. *Id.*

The record did not establish that such an examination was necessary; the ALJ made an

eligibility determination based upon substantial evidence.  For example,  Dr. Bruce W. Randolph determined that Leverson's neurological examination was normal with one exception and that the plaintiff's alleged pain exceeded his findings.  R.148.  Dr. Ball's notes from May 18, 2006 indicate that upon physical exam, plaintiff's straight leg test was negative, his heel to toe walk was normal and his deep tendon reflexes were equal bilaterally.  R. 211.  Further, the April 4, 2007 medical records from Dr. Ahmad at  the Aaron E. Henry Community Health Center that Leverson presented to the Appeals Council stated that Leverson had "no focal neurological deficits."  R. 210.  The evidence does not support a determination that the ALJ needed another neurological evaluation to make a disability decision.  Therefore, the Commissioner's decision is affirmed.

For the foregoing reasons, the court concludes that the Commissioner's final decision should be affirmed.  A separate judgment affirming the Commissioner's final decision shall issue simultaneously with this Memorandum Opinion.

This, the 19th day of September 2008.

/S/ S. ALLAN ALEXANDER
U.S. MAGISTRATE JUDGE